IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RODNEY J. MURPHY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 1:20-cv-337 (RDA-TCB) |
| ) | |
| COMMONWEALTH OF VIRGINIA, *et al.*,) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on a Renewed Motion to Dismiss (Dkt. 28) filed by Defendant Judy Lew. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered the Motion, along with Lew's initial Memorandum in support of her Motion to Dismiss (Dkt. 8), Murphy's Response (Dkt. 13), and Lew's Memorandum in Support of her Renewed Motion to Dismiss (Dkt. 29), this Court GRANTS Defendant's Renewed Motion (Dkt. 28) for the reasons that follow.

### I.  BACKGROUND[1]

In late 2019, Ronald Murphy discovered his daughter, who he thought was dead, was actually alive. Specifically, on December 13, 2019, Ms. Tranessa Waters informed Murphy that "he had a daughter born on January 10, 2007." Dkt. 1 ¶ 13. Ms. Waters also told Murphy at that time that when his daughter was born, she was "left in the care of the Loudoun County Department

---

[1] Plaintiff's allegations are taken as true for the purposes of evaluating the instant Renewed Motion to Dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

of Social Services[.]" *Id*. Murphy was surprised because at the time of her birth, he had been told the child was stillborn. *Id*.[2]

Murphy then tried to find his daughter. To do so, he contacted the Loudoun County and Virginia Departments of Social Services. *Id.* ¶ 14. During this process, he spoke with several County and Commonwealth representatives, but they could not give him any information about his daughter. *Id.* ¶¶ 14-16.

In response, Murphy sued a litany of Commonwealth and County defendants in their official and individual capacities. Dkt. 1. This Court dismissed Murphy's claim against the County Defendants for failure to state a claim and also dismissed his claim against the Commonwealth Defendants for lack of subject matter jurisdiction under the Eleventh Amendment. *Murphy v. Virginia*, No. 1:20-cv-337, 2021 WL 1878373, at *3 (E.D. Va. Feb. 5, 2021).

Murphy appealed. On appeal, the Fourth Circuit affirmed this Court's dismissal of Murphy's claims against all Defendants except for the claim against Judy Lew in her individual capacity. *Murphy v. Virginia*, No. 21-1253, 2022 WL 17484286, at *2 (4th Cir. Dec. 7, 2022). Lew then filed a Renewed Motion to Dismiss on December 30, 2022, reraising her original argument that Murphy failed to state a claim against her in her individual capacity. Dkt. 28. Murphy had twenty-one days, until January 20, 2023, to file an Opposition to Defendant's Renewed Motion, but he failed to respond. So, on January 30, 2023, this Court ordered Murphy to notify the Court if he opposed Lew's Renewed Motion and to show cause why an untimely opposition should be allowed, giving him until February 13, 2023, to respond. Dkt. 32. The Court also warned Mr. Murphy that if he failed to respond, his action could be dismissed for failure to prosecute. *Id.* Murphy has not responded to the Court's order or Defendant's Renewed Motion.

---

[2] It is unclear who told Murphy that his daughter was stillborn.

Murphy's allegations specific to Lew are as follows. On January 21, 2020, Murphy spoke with Lew, who "informed [P]laintiff that his rights were terminated," that there "was nothing he could do about it," and that the Commonwealth "does not allow paternity testing until the child becomes 21 years of age." Dkt. 1 ¶ 16. Further, Lew told Murphy that if he wanted to communicate with his daughter or "establish a paternal relationship," he would need to contact the Commonwealth. *Id*. Finally, Lew "admitted to being the accomplice of [Murphy's] paternal rights violations, with high hope 'that they [sic] never be reinstated.'" *Id.* ¶ 52.

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011). "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal of the motion is appropriate only if the well-pleaded facts in the complaint "state a claim that is plausible on its face." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

At the motion-to-dismiss stage, a plaintiff need only "allege facts sufficient to state all the elements of her claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), and "the district court must 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff].'" *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va. 2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015)). Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted.

*Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."). And "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing Goldfarb, 791 F.3d at 508).

III.   ANALYSIS

A. Murphy's Failure to Prosecute

As a preliminary matter, this Court finds that Murphy's lack of engagement with the Court upon remand of his case allows for dismissal for failure to prosecute his claim pursuant to Federal Rule of Civil Procedure Rule 41(b). *See Link v. Wabash R. R. Co.*, 370 U.S. 626, 630 (1962) (affirming that courts may dismiss claims *sua sponte* for lack of prosecution).

Murphy's *pro se* status does not excuse him complying with this Court's orders and litigating his claim in a timely manner. To be sure, *pro se* plaintiffs are held to a more lenient standard than those represented by counsel; however, "they as well as other litigants are subject to the time requirements and respect for court orders without which effective judicial administration would be impossible." *Ballard v. Carlson*, 882 F.2d 93, 96 (4th Cir. 1989). And for *pro se* and represented plaintiffs alike, a failure to respond to court orders indicates an intent to not pursue a claim. *See Mazor v. Movement Mortg., LLC*, No. 2:21-cv-629, 2022 WL 18542621, at *2 (E.D. Va. Aug. 4, 2022) (dismissing *pro se* claim for failure to respond to court orders); *Lakhani v. Henrico Cnty. Sch. Bd.*, No. 3:21-cv-728, 2022 WL 736104, at *1 (E.D. Va. Mar. 10, 2022) (same).

Murphy has been provided multiple opportunities to prosecute his claim, but he has been entirely unresponsive since the Fourth Circuit remanded his case. The Fourth Circuit issued its Opinion reversing the dismissal of Lew's individual-capacity claim on December 7, 2022, Dkt. 25, and its Mandate issued on December 29, 2022, Dkt. 27. Lew promptly filed her Renewed Motion a day later. Dkt. 28. Murphy's Opposition to the Renewed Motion was due on January 20, 2023, and, when Murphy failed to meet that deadline, the Court granted him additional time to respond and warned him that he risked dismissal of his claim if he failed to do so. Dkt. 32. Currently, Murphy's response is nearly six months overdue, demonstrating that he has no intention of pursuing this case further.

The Fourth Circuit has instructed that when a court considers whether to dismiss a case for failure to prosecute, it should consider the following factors: "(1) the degree of personal responsibility of the plaintiff, (2) the amount of prejudice caused the defendant, (3) the existence of a 'drawn out history of deliberately proceeding in a dilatory fashion', and (4) the existence of sanctions less drastic than dismissal." *Herbert v. Saffell*, 877 F.2d 267, 270 (4th Cir. 1989) (cleaned up); *see Drumgoole v. Bank of Am., N.A.*, No. 2:10-cv-593, 2011 WL 13234308, at *1 (E.D. Va. Feb. 3, 2011) (applying the *Saffell* factors). To be clear, *Saffell* does not provide a "rigid four-prong test[;] [r]ather, the propriety of a dismissal . . . depends on the particular circumstances of the case." *Ballard*, 882 F.2d at 95.

The first prong of this test weighs against Murphy. As he is proceeding *pro se*, Murphy bears sole responsibility for litigating his case. *Bush v. Adams*, No. 3:9-cv-674, 2010 WL 1253990, at *3 (E.D. Va. Mar. 24, 2010). But Murphy has shirked that responsibility, as he has wholly failed to respond to Lew's renewed Motion to Dismiss, even after an Order that provided him extra time

and warned him about the potential consequences of failing to respond. Dkt. 32. Murphy alone is responsible for that deficiency.

The second prong of the test also weighs against Murphy. Lew has dealt with this litigation for over three years now, and Murphy's failure to prosecute has prolonged this lawsuit. Additionally, the Court has given Murphy ample time to respond to Lew's motions and the Court's Order to Respond. Thus, Murphy's inaction continues to prejudice Lew and supports dismissal of his claim. *See Walker v. Mary Washington Healthcare*, No. 3:15-cv-717, 2017 WL 3262252, at *4 (E.D. Va. July 31, 2017) (finding that a defendant was prejudiced when a *pro se* plaintiff needlessly delayed litigation).

Finally, while the third and fourth prongs of the *Saffel* test support dismissal, they also weigh in favor of dismissal without prejudice. The Court recognizes that Murphy's complete non-responsiveness has caused this case to drag on longer than necessary, but there is no indication that he deliberately intended to draw this case out. Further, even though Plaintiff's continued lack of response renders any sanction less than dismissal ineffective, "dismissal with prejudice is a harsh sanction which should not be invoked lightly." *Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978). As a result, and in line with the approach of myriad other district courts, the Court finds that dismissal without prejudice is the least drastic, but nonetheless effective, measure here. *See Mazor*, 2022 WL 18542621, at *2 (without-prejudice dismissal of *pro se* plaintiff's complaint for failure to comply with court orders); *Lakhani*, 2022 WL 736104, at *1 (same).

Accordingly, the Court will dismiss Plaintiff's claim without prejudice for failure to prosecute.

B. Failure to State a Claim

Independently, Murphy's claims against Lew are deficient under Federal Rule of Civil Procedure 12(b)(6).

Construing Murphy's *pro se* complaint liberally, he pleads two claims against Lew. First, Murphy claims that Lew violated 42 U.S.C. § 1983 by denying Murphy his due process rights when she allegedly terminated his parental rights. Dkt. 1 ¶¶ 46, 47, 50. Second, Murphy alleges that Lew "conspired with County of Loudoun and other State agents" to deprive him of his constitutional rights. *Id.* at ¶ 48.

1. Murphy's § 1983 Claim

A § 1983 claim must allege certain facts to withstand a motion to dismiss. To sufficiently state such a claim, a plaintiff must (1) "allege the violation of a right secured by the Constitution and laws of the United States" and (2) "show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To bring such a claim against an official in their individual capacity, a plaintiff must sufficiently allege that the official "acted personally in the deprivation of the plaintiff's rights." *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (quoting *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985)).

Here, Murphy claims he has parental rights secured by the Constitution, specifically the Fourteenth Amendment. The Fourteenth Amendment guarantees that no state will "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV, § 1. And the Fourteenth Amendment does cover parental rights: indeed, the parent-child relationship is acknowledged as "perhaps the oldest of the fundamental liberty interests . . . ." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). However, some case law indicates that those interests may be limited when a child is born out of wedlock and has no relationship with her father. *See Lehr v.*

*Robertson*, 463 U.S. 248, 260-61 (1983) ("Parental rights do not spring full-blown from the biological connection between parent and child. They require relationships more enduring." (quoting *Caban v. Mohammed*, 441 U.S. 380, 397 (1979) (Stevens, J. dissenting))).

From the Complaint, it is difficult to determine the scope of Murphy's parental constitutional rights. If anything, the *Lehr* Court's ruling indicates that if any such rights exist, they may be somewhat limited. 463 U.S at 261. In *Lehr*, the Supreme Court recognized a "clear distinction between a mere biological relationship and an actual relationship of parental responsibility." *Id.* at 259-60. It specifically recognized that in the latter case, an unwed father can develop strong due process protections by raising his child. *Id.* at 261. Here, Murphy never had the opportunity to develop a relationship with his daughter, which could mean that any constitutional rights related to his biological child may be circumscribed. However, the Court need not wade through the morass of determining what rights Murphy has as a biological father, as his Complaint has not pleaded facts indicating that the second part of the § 1983 test has been met: that Judy Lew personally acted "under color of state law" to deprive him of his constitutional rights.

Here, Murphy alleges that Lew in her individual capacity deprived him of his parental rights. To successfully do so, he must plead facts indicating that Lew's "own individual actions . . . violated the Constitution." *Williamson*, 912 F.3d at 171. In other words, he must show that Lew "acted personally in the deprivation of [his] rights." *Id.* Here, the only actions that Murphy attributes to Lew is that she: (1) told Murphy that his parental rights were terminated, that there was nothing he could do about it, and that Virginia would not do paternity testing until the child became twenty-one years old; (2) told Murphy that he had to contact the State to communicate or

establish a paternal relationship; and (3) "admitted to being the accomplice of [M]urphy's paternal rights violations, with high hope 'that they never be reinstated.'"  Dkt. 1 ¶¶ 16, 52.[3]

Those actions, when taken as true, do not show that Lew violated Murphy's parental rights.[4]  The first two sets of allegations involve Lew relaying information about what had happened: she "informed [him] that his rights *were* terminated" and that he had to contact the State to find out more information.  Dkt. 1 ¶ 16 (emphasis added).  Even assuming that his parental rights were terminated in a way that violated the Fourteenth Amendment, nothing in those allegations indicates that Lew was involved in such termination.  Plaintiff's allegations only relate to what Lew *told* him vis-à-vis his parental rights, not what she *did* in relation to those rights.  Similarly, Lew's comments to Murphy that she was an accomplice of his "paternal rights violations" and that she hoped that his rights would "never be reinstated" is of minimal relevance to the § 1983 claim; they do not clarify how Lew's "specific actions resulted in harm to [Murphy]." *Loughlin v. Vance Cnty. Dep't of Soc. Servs.*, No. 5:14-cv-219, 2015 WL 11117120, at *4 (E.D.N.C. Mar. 31, 2015).  Simply put, Murphy only alleges that Lew made certain statements about his biological child and her feelings about his parental rights; he does not allege any actions

---

[3] In his Response, Plaintiff avers that Lew "had a duty to provide help" to obtain information about his alleged daughter.  Dkt. 13 at 1.  While the Due Process Clause of the Fourteenth Amendment obliges state officials to abstain from depriving a plaintiff of his constitutional rights, no affirmative duty exists requiring an official to assist a plaintiff in securing his alleged liberty interests.  *Patten v. Nichols*, 274 F.3d 829, 836 (4th Cir. 2001) (citing *Deshaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)).

[4] Murphy also has several lines in his Complaint that do not allege facts but instead make legal conclusions.  *See, e.g.*, *id.* at ¶¶ 46-50 ("Lew intentionally and willfully denied plaintiff access . . . . Lew was the first official to inform the plaintiff that she recommended the plaintiff rights be terminated . . . . Lew intentionally denied the plaintiff to the right to due process . . . .").  The Court does not consider such "naked assertions" of wrongdoing that are devoid of the requisite "factual enhancement."  *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (quoting *Twombly*, 550 U.S. at 557).

that she personally took to inhibit his parental rights. That pleading failure is fatal to his claim. *See Baldwin v. Johnson*, No. 2:6-cv-115, 2007 WL 6097209, at *2-3 (E.D. Va. Jan. 11, 2007) ("If a plaintiff has not alleged any personal connection between a defendant and a denial of his constitutional rights, the claim against that defendant must fail.").

### 2. Murphy's Conspiracy Claim

A § 1983 conspiracy claim, like common-law conspiracy, requires allegations of concerted action. Under the relevant standard, a plaintiff must allege sufficient facts to show "that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in the deprivation of a constitutional right." *Barrett v. Pae Gov't Servs.*, No. 1:18-cv-980, 2019 WL 10814589, at *4 (E.D. Va. Jan. 25, 2019), *aff'd*, 975 F.3d 416 (4th Cir. 2020) (cleaned up). Those allegations must be more than simple assertions that a conspiracy exists. *Id.* Instead, a plaintiff must set forth "specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Id.* (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1995)). At the very least, the facts alleged must "reasonably lead to the inference that [the alleged conspirators] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Hinkle*, 81 F.3d at 421.

Murphy's claims are woefully insufficient. His sole conspiracy allegation is the conclusory statement that Lew "conspired with County of Loudoun and other State agents to help conceal the child, to draft into adoption for personal gain." Dkt. 1 at ¶ 48. As with his individual-capacity claim, he offers no allegations that show, or lead to a plausible inference of, concerted action or mutual understanding between Lew and any other County or State agents. Nor does he allege any facts indicating an overt act that Lew took in furtherance of the conspiracy. Instead, all he has done is "plead the bare elements of his cause of action," which falls far short of the pleading

standard imposed by the Federal Rules. *Iqbal*, 556 U.S. at 687. As a result, Plaintiff's conspiracy claim must be dismissed. *See Hinkle*, 81 F.3d at 421-22 (affirming district court grant of summary judgment because plaintiffs failed to "produce any evidence, either direct or circumstantial, that [defendants] acted in concert"); *Barrett*, 2019 WL 10814589, at *4 (dismissing § 1983 conspiracy claim because it "failed to allege facts that make plausible the existence of any agreement").

## IV. CONCLUSION

For the reasons set forth above, it is hereby ORDERED that Defendant Judy Lew's Renewed Motion to Dismiss (Dkt. 28) is GRANTED; and it is

FURTHER ORDERED that Count V is DISMISSED WITHOUT PREJUDICE.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Memorandum Opinion and Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to close this civil action and to send a copy of this Memorandum Opinion and Order to Plaintiff's last address on file.

IT IS SO ORDERED.

July 19, 2023
Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge